**UNITED STATES of America, Plaintiff-Appellee,**

v.

**John C. SACCO, Jr., Defendant-Appellant.**

**No. 438, Docket 35265.**

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1970.

Decided Jan. 19, 1971.

See also, 430 F.2d 1304.

Sheldon M. Markel, Buffalo, N. Y., for defendant-appellant.

H. Kenneth Schroeder, Jr., U. S. Atty. W. D. N. Y., for plaintiff-appellee.

Before MOORE, KAUFMAN and HAYS, Circuit Judges.

HAYS, Circuit Judge:

This is an appeal from a judgment of conviction under 18 U.S.C. § 371 (1964) entered after a jury trial in the United States District Court for the Western District of New York for conspiracy to violate 18 U.S.C. § 2314 (1964) by transporting goods valued in excess of $5,000 in interstate commerce, knowing these goods to have been stolen.

The indictment alleged a conspiracy among Sacco, Russell Bufalino and Salvatore Todaro. The indictment also charged a conspiracy "with other persons whose names were to the Grand Jury unknown." Paul Herbert Parness was named in the indictment as a co-conspirator but not a defendant. Bufalino and Todaro were acquitted by the jury; Parness testified on behalf of the government. Sacco was sentenced to the custody of the Attorney General for a period of four years.

Viewing the evidence in the light most favorable to the government, as we are bound to do, United States v. Oliva, 432 F.2d 130, 131 (2d Cir. 1970), United States v. Branker, 395 F.2d 881, 889 (2d Cir. 1968), cert. denied, sub nom. Lacey v. United States, 393 U.S. 1029, 89 S.Ct. 639, 21 L.Ed.2d 573 (1969), we hold that the evidence supports the following summary of the facts.

Sometime during the latter part of April, 1968, Sacco asked Parness to rent

a truck for him which would be large enough to hold approximately 60 cartons of television sets. For his services in renting the truck and delivering the merchandise, Parness was promised $100; he was given $50 to pay for the rental. Later, on the night of April 29–30, 1968, the Joseph Strauss Company warehouse at 64 Churchill Street in Buffalo was burglarized by one Jack Piskorowski and two accomplices. Sixty-three color televisions sets valued at approximately $25,000 were taken. Piskorowski testified on behalf of the government under a grant of immunity.

On May 1, 1968, Piskorowski negotiated the sale of the stolen television sets to Sacco for $4,500. On the same day Parness rented a U-Haul truck and drove it to the Connecticut Social Club on Connecticut Street in Buffalo and waited there for Sacco to arrive. While Parness was waiting, two men separately came up to him and asked for Sacco and whether he had a truck for Sacco. When Parness told them that he did, the men both said they would wait to see Sacco. One of the men was Piskorowski. When Sacco arrived he directed Parness to give the ignition keys to Piskorowski and to the other man. The two told Sacco that they would load the television sets on to the truck and meet Sacco back at the Social Club within an hour. When they returned Sacco paid them and they left. Parness then got into the truck and, in accordance with Sacco's instructions, drove it to 415 Busti Avenue in Buffalo. There he again met Sacco and they went to an apartment of the first floor where Sacco asked a woman who answered the door if Charlie Calieri was there. She replied that he would be back in a few moments. An unidentified man then took Parness and Sacco to the basement. Shortly thereafter Calieri arrived and under his direction the four men unloaded and stored the television sets in the basement. Parness subsequently returned the truck. Sacco paid him $100 for his services.

On May 2, 1968, Parness telephoned Captain Henry Williams of the New York State Police and told him that he had information about some stolen television sets. He arranged to meet Captain Williams at the railroad yard at the New York Central fuel depot. The meeting took place on May 10 and in the meantime, on May 6, Sacco approached Parness about driving another truck. Several days after the May 1 incident, Sacco told Parness that he was reasonably sure of having made a deal to sell the television sets in Scranton, Pennsylvania.

At the May 10 meeting with Captain Williams, Parness became a paid informer for the police.

On May 12, Sacco told Parness that he had made a connection in Pittston, Pennsylvania and that he was ready to dispose of the television sets. Sacco asked Parness to procure a truck for May 16, and Parness agreed to do so. Apparently, the arrangements for the truck were made for Parness by Captain Williams. Williams told Parness that the Busti Avenue premises would be raided sometime in the afternoon or evening of May 16. That evening, Parness had dinner with Sacco and they went over some maps which showed routes from Buffalo to the Scranton-Pittston area. They proceeded to a parking lot to see the truck and then drove to a house on West Delavan and Ashland Streets in Buffalo where Sacco got out to make some telephone calls. Sacco and Parness then drove to the house on Busti Avenue. In the meantime, Captain Williams had procured a search warrant, and when they reached the Busti Avenue house Sacco and Parness found there a crowd and a number of police cars. According to Parness, Sacco was visibly shaken and exclaimed that he had been "burned." They drove back to the house on Ashland and West Delavan where Sacco honked his horn. A man identified as Todaro, one of the acquitted defendants, came out, and Sacco told him to notify "Russell" (i. e., Bufalino, the other acquitted defendant and the alleged Pennsylvania connection) that they would not be coming.

Defendant urges several grounds for reversal. The first of these is that the trial judge erred in charging the jury that they could find Sacco guilty of conspiring with Paul Parness. The basis for this contention is the admitted fact that Parness was, at some point in time, a police informer. It was not until May 10, however, that Parness assumed this status. The fact at a point in the conspiracy one of the conspirators becomes an informer does not alter the character of the conspiracy as it existed up to that point. See United States v. Corallo, 413 F.2d 1306, 1321 (2d Cir.), cert. denied, 396 U.S. 958, 963, 90 S.Ct. 431, 24 L.Ed.2d 422 (1969). In the instant case there was sufficient evidence to provide a basis for the jury's finding that Sacco and Parness conspired to transport the goods to Pennsylvania before May 10. Two of the overt acts in the indictment, the receipt of the sets by Parness, Sacco and others on May 1 and the unloading of the sets by Parness, Sacco and others on May 1, took place even before May 2, the date of the initial inconclusive contact with Captain Williams.

The defendant's next contention is that the trial court erred in permitting the jury to consider whether or not Sacco conspired with "persons unknown," as charged in the indictment. Several persons other than Todaro, Bufalino and Parness may well have been involved in the conspiracy. Piskorowski testified that someone who remained unidentified had made the initial call to Sacco to negotiate the sale, and the same or another unidentified person was present with Piskorowski when he turned over the truckload of television sets. In addition to Parness, Sacco and Calieri, an unidentified person participated in the unloading of the truck. Sacco had told Parness that several men would help unload the sets when he arrived in Pennsylvania. The trial court's charge was therefore proper.

Defendant objects to the portion of the charge which delineated the time limits of the conspiracy in the light of the overt acts alleged. We find the charge in this respect to have been careful and accurate. The trial judge defined conspiracy, explained what evidence was required to establish the existence of a conspiracy, and explained the basis on which a defendant could be found to be a member of a conspiracy. He specifically charged that "[t]he overt act must be carried out while the conspiracy is in existence." He emphasized that before the jury could convict it "must find that one of the overt acts alleged was committed by at least one of the defendants and that it was committed during the time period which you find to be the time period of the conspiracy." If a charge is substantially accurate, it is not error for the trial judge to refuse to use the language submitted by counsel. United States v. Corallo, *supra* 413 F.2d at 1324; United States v. Kelly, 349 F.2d 720, 760–761 (2d Cir. 1965), cert. denied, 384 U.S. 947, 86 S.Ct. 1467, 16 L.Ed.2d 544 (1966). It is also true that "[o]nce the judge has made an accurate and correct charge the extent of its amplification must rest largely in his discretion. The trial judge, in the light of the whole trial and with the jury before him, may feel that * * * to indulge in variations of statement might well confuse." United States v. Bayer, 331 U.S. 532, 536, 67 S.Ct. 1394, 1396, 91 L.Ed. 1654 (1947).

Finally, defendant makes several contentions with respect to the search of the premises of Charles Calieri at 415 Busti Avenue on May 16, 1968. Defendant moved, both before and during trial, to suppress all evidence seized during that search, principally the cartons of television sets, on the ground that the search warrant on the basis of which the search was conducted was invalid. These motions were denied because defendant did not have standing to raise the objection. We agree with that conclusion.

"Fourth Amendment rights are personal rights, which * * * may not be vicariously asserted." Alderman

v. United States, 394 U.S. 165, 174, 89 S.Ct. 961, 966, 22 L.Ed.2d 176 (1969). There is no claim by Sacco of any legal interest in Calieri's premises; nor is this a case where a dwelling was shared by two or more, Mancusi v. DeForte, 392 U.S. 364, 369, 88 S.Ct. 2120, 20 L.Ed.2d 1154 (1968), nor where one who was not the legal owner of the premises was the de facto occupant, United States ex rel. DeForte v. Mancusi, 379 F.2d 897, 903 (2d Cir. 1967) aff'd sub nom. Mancusi v. DeForte, *supra.* There was no showing that Sacco had access to Calieri's basement and it is undisputed that he was not present at the time of the search. See Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960).

Nor does Sacco have standing by virtue of his interest in the stolen television sets. His claim amounts to the contention that he had a sufficient possessory interest in the stolen goods to entitle him to object to their seizure. However, as this court said in United States v. Lopez, 420 F.2d 313, 316 (2d Cir. 1969), "it does not follow that a 'possessory interest' in goods seized from another's premises is sufficient in itself to entitle a defendant to suppression." In United States v. Bozza, 365 F.2d 206, 223 (2d Cir. 1966), we made it plain that the values sought to be protected by the Fourteenth Amendment are not "served by holding that a thief who has left evidence of his crime on the premises of a confederate is subrogated to the latter's right to complain of a search and seizure, * * *"

Finally this is not a case where as in Jones v. United States, *supra,* the indictment charged possession so that Sacco was faced with the dilemma that his attack upon the seizure would constitute an admission of the substance of the crime alleged. Proof of possession would have been insufficient to support the charge of conspiracy to transport stolen goods in interstate commerce; in fact, possession would not appear even to be a prerequisite to conviction on such a charge. What prevents Sacco from being successful in arguing possessory interest on his motion to suppress is not any dilemma that he faced but the fact that the goods were not his, a fact that was not contradicted either on the suppression motion or at trial.

■ Defendant has the burden of showing that he has standing to challenge admission of the seized evidence. See United States v. Masterson, 383 F.2d 610, 614 (2d Cir. 1967), cert. denied, 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1147 (1968). That burden he has not met. We therefore need not deal with his contentions respecting the validity of the search warrant.

We have reviewed various other contentions raised by Sacco and find them to be without merit. The judgment of conviction is affirmed.

IRVING R. KAUFMAN, Circuit Judge (concurring):

I concur fully in my brother HAYS' opinion. I would add the observation, however, that because Parness joined the conspiracy to transport stolen goods in interstate commerce before he became an informant, I understand we do not reach the question whether his relationship with the police was such as to end his status as a co-conspirator. Cf. United States v. DeSapio, 435 F.2d 272 (2d Cir. 1970).