**UNITED STATES of America,
Appellee,**

v.

**C. Parke MASTERSON, Defendant-
Appellant.**

**No. 484, Docket 31283.**

United States Court of Appeals
Second Circuit.

Argued May 18, 1967.

Decided Oct. 3, 1967.

Joseph Goldberg, New York City, for appellant.

Richard A. Givens, Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York, New York City, Michael W. Mitchell, Asst. U. S. Atty., on the brief), for appellee.

Before LUMBARD and MOORE, Circuit Judges, and BONSAL, District Judge.*

MOORE, Circuit Judge:

Appellant was convicted of falsifying or causing to be falsified certain invoices and of making or causing to be made certain false accounts in relation to the bankruptcy proceedings of Twin Lock, Inc. in violation of 18 U.S.C. §§ 152, 2.[1] The major issues on appeal concern the sufficiency of the evidence and whether the invoices in question should have been excluded from evidence as a product of an illegal search and seizure.

Appellant, a lawyer, was the president of Twin Lock until shortly before January 19, 1961, when Twin Lock filed a voluntary petition in bankruptcy pursuant to Chapter 11 of the Bankruptcy Act. 11 U.S.C. § 701 et seq. Appellant's association with Twin Lock did not terminate with his resignation of the presidency, however, as he continued to render legal services to the corporation. Subse-

---

\* Of the Southern District of New York, sitting by designation.

1. Section 152 provides in relevant part: "Whoever knowingly and fraudulently makes a false oath or account in or in relation to any bankruptcy proceeding; or

"\*    \*    \*    \*    \*    \*

"Whoever, after the filing of a bankruptcy proceeding or in contemplation thereof, knowingly and fraudulently \* \* \* falsifies, or makes a false entry in any document affecting or relating to the property or affairs of a bankrupt \* \* \*

"\*    \*    \*    \*    \*    \*

"Shall be fined not more than $5,000 or imprisoned not more than five years, or both."

Section 2 provides:

"(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

"(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal."

quent to the filing of the petition, the Bankruptcy Court permitted Twin Lock to be operated by debtors in possession, see 11 U.S.C. § 742, but required the posting of bonds to secure creditors. Debtor-in-possession financial statements were required to be submitted to the Referee in Bankruptcy periodically. On December 24, 1963, the corporation was adjudged a bankrupt and the debtor-in-possession period was ended.

At the trial, it developed that several of the periodic financial statements were false as they were based in part on invoices reporting sales that never took place. The effect of the false invoices was to swell the sales figures of the corporation, thus improving its apparent financial condition and causing a reduction of the amount of the bonds required by the Bankruptcy Court for the debtors to remain in possession. Appellant argues that there was insufficient evidence to connect him with any of the false invoices. A brief review of the testimony of certain witnesses demonstrates that this contention is without merit.

Ira H. Zarett, a certified public accountant associated with the firm designated by the Referee to submit the statements of Twin Lock's finances, testified that the statements in question had been prepared by him on the basis of invoices he examined at Twin Lock's office in New York City. He further testified that he dealt principally with appellant when visiting the office and discussed each financial statement with appellant, reviewing with him the sales figures. Zarett stated that the invoices in Government Exhibit 4 (including the ones alleged to have been false) were taken into account in preparing the financial statements.

■ Mrs. Rita Mayer, secretary at the Twin Lock office in New York City, testified that during the relevant period she typed the invoices for Twin Lock and that the information for these invoices came from the following three sources: (1) directly from Twin Lock customers, (2) from Lee Ford, Twin Lock's manufacturing representative in California where the company had its plant, and (3) from appellant. Mrs. Mayer was unable to determine from which of the three sources the information had come for specific invoices in Government Exhibit 4. However, Lee Ford testified that his records showed that he had never shipped out any of the material shown on the Exhibit 4 invoices and had not furnished the information for them, and numerous Twin Lock customers, listed on the invoices as purchasers, testified that a large number of the invoices, including all involved in the counts on which appellant was convicted, showed merchandise which was never received and that all the invoices save one were entirely fictitious and not shown anywhere on their records. The logical conclusion to be drawn from the testimony of the above witnesses, and the conclusion apparently drawn by the jury, is that the information for the false invoices typed by Mrs. Mayer must have come from appellant, the other two sources being excluded. Thus, it is not fatal to the Government's case, as appellant strenuously argues, that Mrs. Mayer was unable to testify directly as to the source of information for each invoice. The evidence was clearly sufficient for the jury to conclude from the testimony of all the witnesses that appellant was the source of the false information.

We now turn to appellant's search and seizure claim. Twin Lock had apparently opened its office at 10 Columbus Circle, New York City, in 1958—at that time appellant had his law office elsewhere—but in 1961 appellant took over the lease *in toto* for use as his law office. Twin Lock was permitted, however, to use a desk and some filing cabinets in the outer room of the suite, although it contributed no rent. Mrs. Mayer and a Twin Lock salesman used this space regularly as did one Joseph Lavorata, Twin Lock's managing agent during the debtor-in-possession period. The corporate records were kept in the filing cabinets.

On January 9, 1964, after Twin Lock had been adjudged a bankrupt, an associate of the Trustee in Bankruptcy together with Mr. Zarett, representing the Referee, entered the premises and took the corporate records against appellant's wishes.[2] Prior to the trial, appellant moved to suppress the invoices— seized as part of the records—on the grounds that the Trustee's representative had trespassed on appellant's premises, making the invoices a product of an illegal search and seizure in violation of appellant's Fourth Amendment rights. Judge Cannella denied the motion on the ground that even if the records had been illegally seized, they should not be suppressed in a criminal trial as the Trustee is not a law enforcement agent. At trial, when appellant objected to the introduction of the invoices in evidence, the trial court, after hearing testimony in the absence of the jury concerning the circumstances of the taking of the records, followed Judge Cannella's ruling and allowed the invoices into evidence.

We believe that both judges properly admitted the invoices into evidence. However, we do not reach the question of whether the records, which were found by the district court to be illegally seized by representatives of the Trustee in Bankruptcy are excludable in a criminal trial, because we find that appellant, under the circumstances of this case, has not discharged his burden of persuading the court below that he has standing to challenge the legality of this seizure. Both judges below who passed upon this question assumed that since the records were seized from appellant's premises he is a person "aggrieved" by the search, even though the records were corporate property. To qualify as an "aggrieved person" within Rule 41(e), one must be a "victim" of the search or seizure, "one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else." The purpose of the rule is to protect against invasion of privacy and the security of property Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697 (1960). See United States ex rel. DeForte v. Mancusi, 379 F.2d 897 (2 Cir. June 28, 1967). The appellant failed to show either that the search was directed against him or that it invaded the security of his property.

It is clear that the purpose of the seizure of the records was to enable the Trustee to ascertain the financial position of the bankrupt, Twin Lock. We cannot say that the search was for the purpose of obtaining evidence for use against appellant, when the record shows that prior to examination of these records no criminal proceedings had been commenced and there is no showing that such proceedings were contemplated by the Trustee. Therefore this case is unlike United States v. Birrell, 242 F.Supp. 191 (1965).

Nor was the security of appellant's property or his right to privacy in any way threatened or impaired. It is undisputed that the seized materials were the property of the bankrupt and that the Trustee was entitled to their possession. 11 U.S.C. § 110. While the court below found that the Trustee's representatives committed a trespass in entering appellant's office to remove the records, appellant was at most a bailee with respect to Twin Lock's records. A bailor is privileged peacefully to go upon the property of a bailee in order to recover possession of his property. 1 Restatement of Torts, Second § 183. The Trustee's representatives did no more than a private person could lawfully do under similar circumstances. It cannot be said that the security of appellant's property was disturbed by an action which any private person similarly situated could lawfully have undertaken.

---

**2.** Although appellant was apparently not present when the records were taken, he had successfully turned away the Trustee's associate earlier in the day.

Further, it would be most inappropriate to defeat the Trustee's clear right to the use and possession of documents of which he has title, merely because a technical trespass accelerated their reduction to possession. The parties agree that the same documents could have been obtained by the Trustee in another manner at a later date. Appellant has not shown that he was in any way prejudiced by the manner in which they were obtained.

On a motion to suppress under Rule 41(e) of the Federal Rules of Criminal Procedure, the burden is on the defendant to prove all facts necessary to sustain the motion. Murray v. United States, 333 F.2d 409 (10 Cir. 1964), vacated on other grounds, 380 U.S. 527, 85 S.Ct. 1345, 14 L.Ed.2d 266 (1965); United States v. Poppitt, 227 F.Supp. 73 (D.Del.1964); 5 Orfield, Criminal Procedure Under the Federal Rules § 41.54 (1967). Appellant has failed to show facts sufficient to give him standing to challenge admission of the invoices. Therefore it was proper to admit them at trial.

Appellant also contends that the trial court erred in not instructing the jury that he could not be convicted of physically making false debtor-in-possession statements as the record established that others physically prepared the statements. As appellant took no exception to the charge he cannot complain now. At any rate, the jury could hardly have been confused as there was never any suggestion that appellant had physically prepared any documents, only that he had provided false information which was reflected in certain documents.

Appellant objects that it was error for the trial court to allow his Grand Jury testimony into evidence at the trial. As his testimony before the Grand Jury was given after he was fully advised of his rights, including being told the nature of the investigation and that he was a subject of the investigation, there was no error in introducing it at the trial.

We have examined appellant's other points and find them to be without merit.

Affirmed.