**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Larry ROSENBERG, Defendant-Appellant.**

**No. 17269.**

United States Court of Appeals Seventh Circuit.

Aug. 25, 1969.

Rehearing Denied Oct. 14, 1969.

Melvin B. Lewis, Chicago, Ill., for appellant.

Thomas A. Foran, U. S. Atty., Peter F. Vaira, Chicago, Ill., for appellee, John Peter Lulinski, Michael B. Nash, Sheldon Davidson, Asst. U. S. Attys., of counsel.

Before KILEY, SWYGERT and KERNER, Circuit Judges.

KILEY, Circuit Judge.

A jury convicted Rosenberg of conspiracy to withhold, and withholding of, records from a bankruptcy trustee in violation of 18 U.S.C. § 152. He has appealed. We reverse and remand.

In an earlier jury trial Rosenberg had been tried with Harris, Silverstein and Rugendorf under a thirteen-count indictment arising from alleged misconduct in operating the financially distressed Sterling-Ford, Inc. automobile agency. All were convicted of the alleged offenses now before us, except for Count II charging violation of Interstate Extortion Act, 18 U.S.C. § 1951. This court reversed the convictions and remanded for further proceedings. United States v. Harris, 388 F.2d 373 (7th Cir. 1968). On remand, Silverstein and Rugendorf pleaded guilty and Harris pleaded nolo contendere. Rosenberg was retried alone.

This court in the earlier appeal decided that the district court erred in, among other actions, denying defendant's motions to suppress as evidence incriminating records seized in Silverstein's office at Apex Fibers, Inc., a company he had purchased from Rosenberg. This court decided that the district court erred in ruling that Silverstein had no standing. It held that Silverstein and the other three defendants had standing to challenge the search and seizure, since if the evidence seized was inadmissible as to Silverstein but admissible as to the others, the latter would suffer "overwhelming prejudice." 388 F.2d at 379. In remanding, the court stated at 380, "The next question, which is in dispute and which the district judge did not resolve, but which he should be left free to answer on retrial, is whether the agents were lawfully on the premises [Apex Fiber] when they first noticed the presence of the records [seized]."

On that question at the retrial both sides submitted the evidence from the earlier trial. The district court found Rosenberg had standing to challenge the search and seizure but denied the motion to suppress on the ground that the entry and seizure were lawful.

The government to sustain the ruling argues in the alternative that the entry and seizure were lawful but that if we should disagree, the record justifies the ruling on the ground that Rosenberg had no standing.

This court's holding of standing, the government insists, was based on the "overwhelming prejudice" Rosenberg, Rugendorf and Harris would suffer. It points out that prejudice is no longer present since Rosenberg was not tried with Silverstein, as in the earlier trial. Had all defendants been retried, standing could not be challenged, in view of this court's earlier holding that all had standing. The government's argument rests on the happenstance that the three other defendants were not retried with Rosenberg.

United States v. Masterson, 383 F.2d 610 (2d Cir. 1967), is of no aid to the government's argument. There, a bankruptcy trustee's agents, not law enforcement agents, seized records. And the seizure of the records was to enable the trustee to ascertain the debtor's financial position and not to obtain evidence for use in a criminal trial against Masterson, as no criminal proceeding had commenced and none was then contemplated by the trustee. Here the investigation of Sterling-Harris, Inc. was under way. Rosenberg was associated with Sterling-Harris. Federal law enforcement officers entered the Apex Fiber premises without a warrant, observed the relevant records recognized as documents needed by the trustee, then obtained a warrant, returned and seized the documents.

The court in *Masterson* decided that Masterson had not carried his burden of persuading the court that he was an aggrieved person under Rule 41(e), Fed.

R.Crim.P.[1] since he failed to show the search was directed against him or that the security of his property was invaded. 383 F.2d at 613. Here, however, we think the search was directed against Rosenberg. Consequently *Masterson* indirectly supports standing in this case.

Neither is the government aided by United States v. Graham, 391 F.2d 439 (6th Cir. 1968). That decision, like *Masterson,* indirectly supports standing here: "Appellants were not ones 'against whom the search was directed' * * *. Accordingly * * * they lack standing * * *."

Both *Masterson* and *Graham* rely on Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1966), in their construction of Rule 41(e). In *Jones* the Court, noting that "The issue of petitioner's standing is to be decided with reference to Rule 41(e)," went on to state what may qualify a person as "aggrieved": One "against whom the search was directed." *Id.* at 260–261, 80 S.Ct. at 730–731. Rosenberg, in our opinion on the facts of this case, is such a one. We hold he has standing to challenge the search and seizure.[2]

■ In our opinion the district court, though correct in ruling that Rosenberg had standing, erred in denying the motion to suppress. We think that Rosenberg sustained his burden of persuasion that the agents were unlawfully on the premises when they first noticed the records.

The testimony at the hearing on the motion to suppress is substantially as follows: Agents Ross and Bassett went to the building when the Apex business occupied part of the basement. They had no warrant. The steel entrance door was unlocked but closed. They opened the door and went in. Bassett called out whether anyone was "at home." They went down a corridor to an open door leading to a lighted office. They could see into the office from the corridor. No one was there. They walked in, looked around and saw a wooden box on the desk containing what Ross observed to be records pertaining to the "Sterling-Harris matter." Then they left, and obtained a warrant "on the basis of observations made during the first visit." They returned to the Apex office with the warrant and "took away the things they saw the first time."

■ Bassett testified as follows: When they made the first visit to the Apex office the agents were looking for McAllister, a former employee of Sterling-Harris[3] who had turned over to

---

1. (e) Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for the use as evidence anything so obtained on the ground that (1) the property was illegally seized without warrant, or (2) the warrant is insufficient on its face, or (3) the property seized is not that described in the warrant, or (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, or (5) the warrant was illegally executed. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing.

2. Agent Ross, in charge of the FBI investigation of Sterling-Harris, stated before the jury at the trial that on May 16 the Apex business was that of Silverstein and Rosenberg.

3. There was proof at the original trial that McAllister directed that a degreaser, files and records from Sterling-Harris premises be moved to a vacant store nearby. Before the "receiver's representatives" came to that store McAllister directed another employee to hide the records, degreaser, etc., in the latter's car. The records, degreaser, etc., were transported later to the Apex premises.

Bassett a bill of sale for McAllister's car. He had given Bassett a number of addresses, including that of the Apex office, where the bill of sale could be returned. He had called for the return of the bill. Agents Ross and Bassett were trying to find McAllister when they first entered the Apex office.

We see no merit in the government's arguments that McAllister invited them into the premises to return his bill of sale, or that the commercial nature of the building constituted an implied invitation to enter.

The only testimony that would have any tendency whatever to show McAllister used the Apex premises and thus invited federal agents into the office was that of Silverstein. He testified that McAllister kept "a vapor degreaser" on the premises, and used the premises as a place to "sort of * * * hang his hat" and "maintained some sort of office or headquarters" there. But the degreaser belonged to Sterling-Harris, and the district court found Silverstein a witness not worthy of belief. McAllister, according to Ross' testimony at the trial, told Ross he "could be found there [Apex] from time to time," but did not tell them "to return the bill of sale to Apex Fiber."

The mere fact that the Apex premises were in a commercial building would not justify an otherwise unreasonable search. Mancusi v. DeForte, 392 U.S. 364, 367, 88 S.Ct. 2120, 20 L.Ed. 2d 1154 (1968). We cannot accept the premise that the agents entered merely to return the bill of sale. We view that as inherently improbable. The investigation was under way, and McAllister was an important figure. Ross was heading the investigation and would hardly be accompanying another agent in returning a bill of sale to McAllister when it could be sent or delivered by a clerk. Even if the agents were merely trying to return the bill of sale, it is most unlikely that they would go where McAllister was only from "time to time" without knowing he would be there when they arrived, or that upon entering they would not call out his name instead of calling "Is anybody home." Since no one was there, it was not necessary to "look around" the office if they were merely looking for McAllister.

In Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067 (1968), the original opening of the car was lawful. The government's reliance on the decision of a lawful first entry, here, presupposes a premise we reject.

It is our opinion that the district court was required on the testimony at the hearing to hold that the original entry was unlawful, and the seizure of the records unwarranted. We hold that the ruling on the motion to suppress was error as a matter of law, and that the admission of the records, unlawfully seized, into evidence vitiates the verdict and judgment against Rosenberg. We remand the case to the district court for further proceedings.

Reversed and remanded.