**UNITED STATES of America, Plaintiff,**

v.

**Gamalier CONCEPCION, Defendant.**

**No. 89 CR 890.**

United States District Court,
N.D. Illinois, E.D.

July 17, 1990.

Brian L. Crowe, Coffield, Ungaretti, Harris & Slavin, Patrick A. Tuite, Tuite, Mejia & Giacchetti, Chicago, Ill., for defendant.

Daniel C. Murray, U.S. Atty., Chicago, Ill., for the U.S.

## ORDER

NORGLE, District Judge.

Before the court is the second motion of defendant, Gamalier Concepcion, to suppress evidence. It is denied.

---

Concepcion is under indictment for drug offenses and previously filed a motion to suppress evidence based upon an alleged involuntary consent to search an apartment of which Concepcion was a tenant. A hearing was conducted on this motion on May 16, 1990, at which the arresting officers and both Concepcion and his wife testified. At the conclusion of the May 16th hearing, the court denied Concepcion's motion to suppress, finding that the consent was knowingly, intelligently and voluntarily given.

Concepcion now moves again to suppress evidence claiming that the consent to search his apartment was obtained as a direct result of the illegal entry into the common area of the apartment building and "the illegal entry into the defendant's apartment by the insertion of the key into the lock and the unlocking of the door, and the slight opening of it." Second Motion to Suppress Evidence, ¶ 8.

The following facts relevant to the instant motion are based upon testimony elicited at the May 16th hearing:

Concepcion and codefendant Gary Pollack, suspected of engaging in drug transactions, were the subjects of extensive surveillance conducted by Drug Enforcement Administration agents and Chicago Police Officers assigned to the DEA task force. This surveillance culminated in the observation of Concepcion and Pollack driving their respective automobiles circuitously in the course of making and covering up a drug transaction on October 18, 1989. Pollack was arrested first. A quantity of cocaine was found in the van Pollack was driving and Pollack implicated Concepcion.[1] The agents who arrested Pollack then signaled the agents following Concepcion to arrest Concepcion. Concepcion was apprehended while in an automobile in a parking lot in front of the premises at 5113 E. River Road (the "Apartment Building"). The Apartment Building had

at least three stories and contained about eighteen apartments.[2]

Upon his arrest, Concepcion was removed from the automobile he was driving, handcuffed and placed in a government vehicle. The arresting officers then removed the keys from the ignition of the automobile which Concepcion was driving, in order to render it inoperable, and noticed numerous other keys on the key ring. The arresting officers suspected that Concepcion had a "stash house" nearby, possibly in the Apartment Building. In an attempt to determine whether Concepcion had an apartment in the Apartment Building and if so which apartment he "occupied", the arresting officers took the key ring that they had seized from the automobile Concepcion was driving and went to the front door of the common area of the Apartment Building, which was locked. Noticing that the name "Concepcion" was on an apartment doorbell, they tried the keys on the key ring until they found one which fit the lock to the common area door, opened the common area door and entered into the common area of the Apartment Building. Once inside the common area, the arresting officers observed the mailboxes for tenants in the building and noticed the name "Concepcion" on the mailbox for apartment 1C. The arresting officers then went to apartment 1C and tried the keys until they found one which fit the lock in the door to apartment 1C. Then, in order to identify the key—to determine whether that key was the key to apartment 1C, the arresting officers then turned the key and pushed the door slightly to confirm whether the key would in fact allow access to apartment 1C. Although the door to apartment 1C was opened slightly, the officers did not enter or look into apartment 1C at that time, but instead closed and relocked the door.

Once the arresting officers determined both that the name "Concepcion" was on

1. Pollack has since pled guilty.

2. Concepcion now acknowledges that he was a tenant of the Apartment Building, having leased apartment 1C. This, of course, was essential to his fourth amendment claim as it forms the basis for his claim of a reasonable expectation of privacy in the apartment.

apartment 1C's doorbell and mailbox and that Concepcion possessed keys to the common area of the Apartment Building and to apartment 1C, they then asked Concepcion for consent to search apartment 1C. Concepcion initially denied any connection to the apartment. However, after the arresting officers confronted Concepcion with what they had learned, Concepcion then signed a consent to search apartment 1C. Based upon the consent, and consequently without obtaining a warrant, apartment 1C was searched and a quantity of cocaine discovered.

The fourth amendment to the United States Constitution protects people and privacy interests, not property or property rights, against unreasonable searches and seizures. See *United States v. Katz*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). Concepcion bears the burden of showing that he had a legitimate and reasonable expectation of privacy both in the common area of the Apartment Building and in the apartment, that any entry into the Apartment Building and apartment was illegal, and that therefore any evidence obtained thereby was seized in violation of the fourth amendment. An expectation of privacy "will be violated only if the place is one that the defendant has the right to keep private and subject to his exclusive control." *United States v. Holland*, 755 F.2d 253, 255 (2d Cir.1985).

### The Common Area

The court must emphasize at the outset that the arresting officers, having arrested Concepcion and seized his automobile, were in lawful possession of the keys. Concepcion does not contest this, but nevertheless contends that the arresting officers had no right to enter the common area of the Apartment Building. However, the better reasoned decisions are that searches of

common areas of secured apartment buildings do not violate the tenants' legitimate expectations of privacy. See *United States v. Williams*, 565 F.Supp. 353, 362 n. 15 (N.D.Ill.1983) (collecting cases [3]).

In *United States v. Eisler*, 567 F.2d 814 (8th Cir.1977), the officer gained entry to the common area of an apartment complex by going in right behind a tenant who had opened a door and then from the common hallway observed an individual entering and leaving the defendant's apartment and overheard conversations in the hallway. 567 F.2d at 816. The Eighth Circuit stated that the dispositive question was not whether the officer's entry into the common area was a "technical trespass", but rather "the essential inquiry is whether appellants had a reasonable expectation of privacy in the hallway of the apartment building." *Id.* Holding that they did not, the court observed that locked entrance ways to apartment complexes provide security, not privacy in common hallways. Thus, although there may be an "expectation of security", there can be no expectation of privacy (which necessarily implies freedom from *any* intrusion, not merely unwarranted intrusions) in a common hallway.

Concepcion only had, by virtue of his possession of the key, the right of access to the common area. He could not legitimately exclude anyone from the common area. He had absolutely no control over the activities in the common area. Only the landlord had such control. That the arresting officers were arguably technical trespassers is of no consequence from the fourth amendment perspective. See also *United States v. Boden*, 854 F.2d 983, 990 (7th Cir.1988) (activity in common area could not be shielded from anyone; affirming order denying motion to suppress); *United States v. McGrane*, 746 F.2d 632, 634–35

**3.** *United States v. Acevedo*, 627 F.2d 68, 69 n. 1 (7th Cir.1980); *United States v. Luschen*, 614 F.2d 1164, 1173 (8th Cir.1980); *United States v. Penco*, 612 F.2d 19, 24–25 (2d Cir.1979); *United States v. Eisler*, 567 F.2d 814, 816 (8th Cir.1977); *United States v. Shima*, 545 F.2d 1026, 1029 (5th Cir.1977); *United States v. Calhoun*, 542 F.2d 1094, 1100 (9th Cir.1976); *United States v. Cruz*

*Pagan*, 537 F.2d 554, 557–58 (1st Cir.1976); *United States v. Anderson*, 533 F.2d 1210, 1214 (D.C. Cir.1976); *United States v. Freeman*, 426 F.2d 1351 (9th Cir.1970); *United States v. Conti*, 361 F.2d 153, 157 (2d Cir.1966); *Polk v. United States*, 314 F.2d 837 (9th Cir.1963); *United States v. St. Clair*, 240 F.Supp. 338 (S.D.N.Y. 1965).

(8th Cir.1984); *United States v. Luschen,* 614 F.2d 1164, 1173 (8th Cir.1980).

Concepcion relies upon two Seventh Circuit decisions, *United States v. Rosenberg,* 416 F.2d 680 (7th Cir.1969) and *United States v. Case,* 435 F.2d 766 (7th Cir.1970), for the proposition that one may have a reasonable expectation of privacy in the common area of an apartment building. However, he sees too much in these cases, as both are distinguishable. In *Rosenberg* the search was of a commercial premises which differed greatly from the Apartment Building, in that the distinction between the common area and the individual offices was blurred. *See* 416 F.2d at 682. Moreover, in *Rosenberg* there truly was a search of the premises. The officers observed something in an individual office; they did not, as did the officers who arrested Concepcion, merely investigate the defendant's connection with the premises. Rather, they observed business records and then obtained a warrant for their seizure based upon this observation. *See* 416 F.2d at 682–83. *Rosenberg* would be closer to our case, if the officers in *Rosenberg* had merely viewed defendant's name "stenciled" on the office door and then obtained a warrant.

In *Case,* the agents overheard conversations while in the back hallway of a commercial premises. There the Court of Appeals relied upon the district court's finding that the hallway was always kept locked, that only the proprietors had keys and that the "hallway was used by a very confined group, and most of the time limited to the proprietors of the stores in the building." 435 F.2d at 768–69. It may be true that only the tenants to the Apartment Building, like the proprietors in *Case,* had keys to the common area. However, unlike the common area in *Case,* the common area in the multi-unit Apartment Building was the type of entrance commonly used by visitors, not restricted solely to use by tenants. Finally, with respect to both *Rosenberg* and *Case,* to the extent they are not distinguishable, given their age and the pace of developments in fourth amendment law, the court concludes that if faced with this issue today the Seventh Circuit would agree with the Eighth Circuit.[4]

*United States v. Moreno,* 701 F.2d 815 (9th Cir.1983), also relied upon by Concepcion, is clearly distinguishable. In *Moreno* the court's decision was based upon the officers' failure to comply with the knock and announce requirement in executing a warrant. *See* 18 U.S.C. § 3109. The area which the officers entered was not a common area, but was an alcove occupied only by the defendant, apartment dweller who controlled access to it by a gate buzzer. 701 F.2d at 817. *United States v. Fluker,* 543 F.2d 709 (9th Cir.1976), also based upon a failure to knock and announce, did involve a true common area. However unlike this case which involved the common area to a multi-story, multi-unit apartment building, the building in *Fluker* had only two apartments which shared the isolated common area. *See* 543 F.2d at 712. While both *Fluker* and this case involved true common areas, as the number of individuals with right of access to a common area increases, and with them necessarily the number of visitors and service and delivery personnel, the reasonableness of an individual tenant's expectation of privacy diminishes. In a multi-unit building, such as Concepcion's, an expectation of privacy on the part of an individual tenant in the common area is unreasonable. *See Eisler, supra.* A search occurs only when an expectation of privacy that society is prepared to recognize as reasonable is infringed. *See United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984).

Finally, there is *United States v. Carriger,* 541 F.2d 545 (6th Cir.1976). This is the one case relied upon by Concepcion which is not distinguishable and supports his position. There the officer entered the common area of a twelve unit apartment

---

**4.** *See, e.g., United States v. Acevedo,* 627 F.2d 68, 69 n. 1 (7th Cir.1980) (area was public, but in *dicta* the court noted that it is well settled that "observations made by law enforcement officers from the common areas of multi-unit dwellings ordinarily do not violate a resident's reasonable expectation of privacy.").

building as workmen left through the locked entrance door. In holding that the tenant had a reasonable expectation of privacy the *Carriger* court relied upon *Case,* a decision of the Fifth Circuit, *Fixel v. Wainwright,* 492 F.2d 480 (5th Cir.1974), and the fact that the conduct of the officers constituted a criminal trespass under Michigan law. This court has already distinguished *Case. Fixel,* too, is distinguishable since it involved a fenced backyard adjacent to the apartment, rather than a common entrance and hallway. 541 F.2d at 551. Finally characterization of peace officers' conduct as a criminal trespass, while relevant, implies an over-emphasis on property rights, rather than the privacy interests the fourth amendment was designed to protect. *See Eisler,* 567 F.2d at 816.

### The Apartment

Concepcion next contends that the officers, by inserting Concepcion's key into the door lock of apartment 1C and opening the door "at the most an inch", in order to determine whether the key would allow access to the apartment, before closing the door again, conducted an illegal search.[5] However, the court is persuaded to the contrary by the decision in *United States v. Lyons,* 898 F.2d 210 (1st Cir.1990), which held that similar conduct solely for the purpose of identifying ownership is no search at all. The *Lyons* court stated that while James Lyons had a legitimate expectation that the *contents* of his storage locker would be free from public intrusion, no expectation of privacy existed in whether a key opened the lock to the storage locker. 898 at 212–13 (*citing United States v. DeBardeleben,* 740 F.2d 440 (6th Cir.1984). The arresting officers in this case did essentially the same thing as the officers in *Lyons,* namely, investigated Concepcion's tenancy at or at least control over apartment 1C by determining that a key recovered at the time of his arrest from Concepcion opened the apartment door. As in *Lyons,* the officers here did not open the door so as to see anything inside the apartment or otherwise disturb defendant's privacy. *See United States v. Kramer,* 711 F.2d 789, 794 (7th Cir.1983) (fourth amendment right to privacy is not coextensive with property rights).

The court agrees with the *Lyons* court's conclusion that *Arizona v. Hicks,* 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987), which interpreted the "plain view" exception, is not relevant, since in this case merely identifying the key was so minimally intrusive as to not implicate a reasonable expectation of privacy. 898 F.2d at 213 n. 2. Concepcion also relies upon *United States v. Portillo–Reyes,* 529 F.2d 844 (9th Cir.1976). In that case the court was confronted with an actual search of an automobile and noted that the insertion of a key into the automobile door lock "to see if it fit constituted the beginning of the search." 529 F.2d at 848. However, as the *Portillo–Reyes* court was not addressing a situation in which officers merely identified a key as opening a given door lock, it is not dispositive of our issue.

### CONCLUSION

Accordingly, defendant Concepcion's Second Motion to Suppress is denied, because Concepcion did not have a reasonable expectation of privacy in the common area of the Apartment Building and because the insertion of the key into the lock of apartment 1C, the unlocking of the door and the slight opening of it, for purposes of identifying the key, did not constitute a search of apartment 1C. The arresting officers at all times acted reasonably for the legitimate and necessary purpose of continuing their post-arrest investigation to determine whether Concepcion had an apartment in the building he was arrested in front of, so that they could either obtain his consent to search it or obtain a warrant for its search. The officers exercised restraint by not going into the apartment and observing its contents. Nothing was seized. They returned to the arrested defendant and obtained his consent to enter the apartment. The mere obtaining of this information un-

---

**5.** That Concepcion had a reasonable expectation of privacy in apartment 1C, unlike his claim to a privacy interest in the common area, is not contested.

der these circumstances did not constitute a search or seizure. *See United States v. Hanahan,* 442 F.2d 649, 654 (7th Cir.1971).

IT IS SO ORDERED.