**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Gamalier CONCEPCION, Defendant–**
**Appellant.**

**No. 90–3521.**

United States Court of Appeals,
Seventh Circuit.

Argued Aug. 7, 1991.

Decided Sept. 9, 1991.

Rehearing and Rehearing En Banc
Denied Nov. 8, 1991.

---

Jacqueline Oreglia (argued), Crim. Div., Barry R. Elden, Asst. U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Patrick A. Tuite, Brent D. Stratton (argued), Chicago, Ill., for defendant-appellant.

Before BAUER, Chief Judge, EASTERBROOK, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

EASTERBROOK, Circuit Judge.

Gamalier Concepcion consented to the search of his apartment, where agents of the Drug Enforcement Administration found cocaine. He pleaded guilty to possession of that drug with intent to distribute it, 21 U.S.C. § 841, and received 41 months' imprisonment, reserving for appeal his objection to the validity of his consent. Fed.R.Crim.P. 11(a)(2). Concepcion does not deny giving consent (he signed a form), and does not renew on appeal the argument, which did not persuade the district judge, that the consent was involuntary.

Concepcion contends that his consent is the fruit of two unlawful searches. After arresting him, the agents seized his possessions, including his keys. They found the nameplate "Concepcion" on the mailbox of a nearby apartment building. One of Concepcion's keys opened the outer door. Inside the common area, the agents used the key to unlock apartment 1C. They opened the door an inch but immediately closed and locked it without looking inside. Next they asked Concepcion to consent to the search of apartment 1C. Concepcion denied knowing anything about the apartment; after the agents told him that his key opened the lock, that his name was on the mailbox, and that they had watched him most of the day and seen him use the apartment building, Concepcion relented and signed the consent form. The district court concluded that neither the entry into the common area nor the insertion of the key into the lock was an unreasonable search. 742 F.Supp. 503 (N.D.Ill.1990).

The district court believed that neither step was an unreasonable search because neither was a search at all. As the court observed, a "search" is the invasion of a sphere in which society recognizes

reasonable expectations of privacy. *United States v. Jacobsen*, 466 U.S. 109, 113, 104 S.Ct. 1652, 1656, 80 L.Ed.2d 85 (1984). Concepcion could not assert an expectation of "privacy" in the common area, the court concluded, because the other five tenants sharing the same entrance used the space and could admit as many guests as they pleased; Concepcion had no expectation that goings-on in the common areas would remain his secret. Indeed, it is odd to think of an expectation of "privacy" in the entrances to a building. The vestibule and other common areas are used by postal carriers, custodians, and peddlers. The area outside one's door lacks anything like the privacy of the area inside. We think the district court on solid ground in holding that a tenant has no reasonable expectation of privacy in the common areas of an apartment building. See *United States v. Acevedo*, 627 F.2d 68, 69 n. 1 (7th Cir.1980); *United States v. Boden*, 854 F.2d 983 (7th Cir.1988). See also, e.g., *United States v. Holland*, 755 F.2d 253 (2d Cir.1985); *United States v. Penco*, 612 F.2d 19 (2d Cir. 1979); *United States v. Eisler*, 567 F.2d 814 (8th Cir.1977); *United States v. Shima*, 560 F.2d 1287 (5th Cir.1977) (in banc). To the extent *United States v. Rosenberg*, 416 F.2d 680 (7th Cir.1969), and *United States v. Case*, 435 F.2d 766 (7th Cir.1970), imply otherwise, they have not survived changes in the Supreme Court's definition of protected privacy interests.

■ Strange as it may seem, the entry of the key into the lock presents a harder question than the entry of the agents into the hallway. A keyhole contains *information*—information about who has access to the space beyond. As the fourth amendment protects private information rather than formal definitions of property, see *Arizona v. Hicks*, 480 U.S. 321, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987); *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), the lock is a potentially protected zone. And as the tumbler of a lock is not accessible to strangers, unlike the information about telephone numbers in the pen register case, *Smith v. Maryland*, 442 U.S. 735, 99 S.Ct. 2577, 61 L.Ed.2d 220 (1979), the use of an instrument to examine its workings (that is, a key) looks a lot like a search. So the ninth circuit held in *United States v. Portillo–Reyes*, 529 F.2d 844 (9th Cir.1975), and although it has had second thoughts, see *United States v. Grandstaff*, 813 F.2d 1353, 1358 n. 5 (9th Cir.1987), it has not overruled *Portillo–Reyes*. The first and sixth circuits, however, have held the opposite, *United States v. Lyons*, 898 F.2d 210, 212–13 (1st Cir.1990); *United States v. DeBardeleben*, 740 F.2d 440, 443–45 (6th Cir. 1984), and the district court followed these opinions.

■ Because the agents obtain information from the inside of the lock, which is both used frequently by the owner and not open to public view, it seems irresistible that inserting and turning the key is a "search". *Hicks* provides a close parallel, holding that turning over a phonograph to read its serial number is a search. The bottom of a turntable is no more a storehouse for personal secrets than are the innards of a lock, yet the Court held the fourth amendment applicable. It does not follow, however, that the agents need a warrant or even probable cause to put a key into a lock. *Hicks* said that a warrant was unnecessary. The fourth amendment requires that searches be *reasonable*, and although a warrant may be an essential ingredient of reasonableness much of the time, for less intrusive searches it is not. E.g., *California v. Acevedo*, —— U.S. ——, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991). The agents properly arrested Concepcion without a warrant, see *United States v. Watson*, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), and they properly searched his pockets and seized his keys without a warrant, see *United States v. Robinson*, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973); *Gustafson v. Florida*, 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973). Why then should a warrant be necessary to learn whether the keys in Concepcion's possession operate a lock?

■ Consider what information the "search" of the lock revealed. It told the agents that *Gamalier* Concepcion was the

tenant of an apartment bearing the name "Concepcion". This information induced him to consent. Where Gamalier Concepcion lived was something the agents could have ascertained in many other ways. They could have looked him up in the telephone book or conducted a computer search of drivers' licenses. If they did not find him (or if they found too many persons of the same name), they could have visited the landlord and asked who lived in apartment 1C. Instead of asking the landlord who lived there, they could have shown the landlord the key in their possession and asked the landlord to compare it with the key issued to the tenant. So too the agents could have followed Concepcion around to learn his residence (as they did; the key just confirmed what they thought they knew). The information the agents obtained from putting the key in the lock thus was no secret. What the officers learned from inverting the turntable in *Hicks* they could not have come by in any other way; these agents thus invaded less of Concepcion's interest in security of information when they used the key to verify his address. How much cause agents need to do something depends on how deeply they invade the zone of privacy. *United States v. Chaidez*, 919 F.2d 1193, 1197–98 (7th Cir. 1990). Concepcion, who was not hiding anything in the lock (an unlikely repository for cocaine or a diary, although perhaps James Bond could use it for a microdot), had no interest other than the identity of his apartment. Although the owner of a lock has a privacy interest in a keyhole— enough to make the inspection of that lock a "search"—the privacy interest is so small that the officers do not need probable cause to inspect it. Because agents are entitled to learn a suspect's address without probable cause, the use of the key to accomplish that objective did not violate the fourth amendment.

AFFIRMED.